No. 120.—PEYTON L. WADE *et al.* plaintiffs in error, *vs.* SARAH A. POWELL, defendant in error.

20 645
124 639

[1.] A deed of trust which creates a separate estate in the wife, and which imposes no duty upon the trustee except that of merely holding the legal title, gives to the wife the right to the possession and use of the trust property.

[2.] And if the trust property should get into the possession of the husband or the agent of the trustee, the wife would have the right to sue both the husband and the trustee in Equity for the property. At least, she would provided the case she made was such as would entitle her to the possession of all or some of the property specifically.

[3.] And in such case she would also have the right to an injunction to prevent the property from passing out of the hands of the husband into thos e of his principal, the trustee.

[4.] If it is necessary to the attainment of the relief to which a complainant is entitled, that A and B should be defendants to the bill, and A resides in one county and B in another, the complainant may file his bill in eith er county.

In Equity, in Murray Superior Court. Tried before Judge TRIPPE, April Term, 1856.

This bill was filed by Sarah A. Powell, wife of Jacob S. P.

Powell, by her next friend, James Edmonson, against Peyton L. Wade, Jesse L. Wade, of the County of Whitfield, and the said James S. P. Powell of Murray County.

The bill charges—

1st. That in March, 1849, James D. Irwin made a deed of trust, conveying certain negroes to Peyton L. Wade, in trust for the sole and separate use of complainant during her life, and then absolutely to such children as she might leave, surviving her; that the negroes now number some thirty-five and are in the possession of complainant.

2d. That on the 4th day of November, 1851, Jacob S. P. Powell, (complainant's husband) made an agreement with Peyton L. Wade for the purchase of certain other negroes, to become a part of the trust estate on the terms of the first trust deed.

3d. That Peyton L. Wade, by himself and agents, has taken possession of all the negroes mentioned in the trust deed and the contract made in November, 1851, and used a portion of the property, but how much he has worked and how long she does not know, and prays that Wade may answer and set forth.

4th. That the trust property in Wade's possession is of the value of $25.000, and of the annual value for hire $2.000; that he has failed to account for the profits; that he is setting up title in himself to a part of the property, and seeks to recover that part of it which is in the possession of her husband.

5th. That Wade and his agents, Jesse Wade and Jacob S. P. Powell have had the management of the trust property; that Wade, through her husband as his agent, has allowed her the use and possession of a part of the property, but has failed to come to any account, touching the management of the trust property, the profits, his receipts and disbursements, the work and labor of the negroes, and what charges he has made or intends to make for taking care of said property.

6th. That she is informed and believes that Wade seeks to apply the hire and profits of the trust property to the pay-

ment of a claim he has against the husband of complainant, and to hold the possession of the trust estate, and claims the profits thereof.

7th. That she fears, and has reason to fear, that Wade is wasting the trust property.

8th. Complainant and her husband are living together in harmony, and strife and contention have arisen between Wade and her husband.

9th. That Wade has commenced an action in the Superior Court of Murray County for a part of the trust property against her husband, James S. P. Powell.

10th. That Wade has commenced another suit in Murray Superior Court against her husband for the property conveyed by her father to Wade in trust for her; that the negroes are in her possession; yet, Wade has held her husband to bail, and threatens to prosecute said suit to judgment and take possession of the negroes.

11th. That Wade has received large sums of money for the hire of the trust property and labor of the negroes; has applied a small portion thereof to the use and benefit of the trust estate, and has converted the remainder to his own use.

12th. That Wade has worked a part of the negroes; made corn and cotton, and applied the same to his own use; that she has applied to Wade for an account of the proceeds of the trust property, but has met with a proposition to settle her husband's debts.

13th. That Wade threatens and intends to apply the trust property to his own use.

The bill prayed that all the defendants may answer; that they show how much Jacob S. P. Powell owes P. L. Wade, and how much Wade is indebted to Powell; that P. L. Wade may account for the trust estate; that he be removed and another trustee be appointed; that the suits brought by Peyton L. Wade against Powell be enjoined, and that Wade be enjoined from taking possession of the trust property, and that the complainant may have such other or further relief as her case may require.

To this bill a general demurrer was filed by the defend-ants., The two Wades also plead to the jurisdiction of the Court, alleging that they were not residents of the County of Murray, but resided in the County of Whitfield.

The Court over-ruled the demurrer and plea to the jurisdiction, and refused to dissolve the injunction, and Counsel for defendants excepted.

HOOPER & AKIN, for plaintiffs.

UNDERWOOD; WALKER, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The first question is, was there any equity in the bill?

The bill prays for an account from the trustee, for the removal of the old trustee, and the appointment of a new one, and for an injunction to restrain the prosecution of the trover suits, and to restrain P. L. Wade from taking possession of the trust property.

There was equity in the bill, if Mrs. Powell was entitled to the possession and use of the negroes constituting the trust property; and the bill was a measure necessary to enable her to obtain their possession and use.

[1.] We think that Mrs. Powell was entitled to the possession and use of the trust property. According to the terms of the deed, the property was to be for her sole and separate use; and the trustee was to have nothing to do except merely to hold the legal title to the property.

In such a case, the *cestui que trust* is, unless there is some special reason to the contrary, entitled to the possession and use of the property. (*Wilkins and Wife vs. Williamson,* 14 *Ga.*)

Some of the trust negroes are the "family servants" of Mrs. Powell. To the possession of these she is entitled *in specie.*

Was the bill a necessary measure to enable Mrs. Powell to obtain the possession of all or any of the trust property?

A part of the negroes were, as we have seen, "family servants."

An action of trover would not have been such a measure as could have been depended on to secure the delivery of these negroes to Mrs. Powell. Nothing but a decree in Equity for their delivery to her, would be what could be relied on for that purpose.

The negroes were *all* in the possession of her husband; and him she could not have sued at all, at Law, as the wife cannot, at Law, sue the husband. (1 *Black. Com.* 444; 2 *Story's Eq.* §1368.) In Equity, however, the wife may sue the husband. (*Id.*)

It is plain, from several things which appear in the bill, that Powell, the husband, is insolvent, although the bill does not, I believe, contain a distinct allegation that he is insolvent. The insertion of such an allegation would strengthen the bill. Being insolvent, it is doubtful whether a judgment against him, even for damages, would be worth any thing. This will appear more distinctly presently.

As between *Mrs. Powell and Mr. Powell*, therefore, the bill *was* a measure necessary to enable her to obtain the possession of the trust property, or perhaps to obtain any thing.

Was it so, as between her and Peyton L. Wade?

Powell, the husband, was, it is true, in the possession of the trust property, but he was in the possession of it as the agent of Peyton L. Wade, and he had been sued for it in trover, by Wade. Powell, therefore, was bound, in law, to return the property to Wade. This obligation would not have been at all impaired by the existence of the bill of Mrs. Powell against him, if that bill had been against him alone. It would still have been his duty to return the property to Wade, his principal. It may be doubted, perhaps, whether *a judgment* against him in such a bill, would have been a protection to him from Wade.

In order, then, to make it certain that a decree against Powell would insure the delivery of the property to Mrs. Powell, it was necessary for her to have the use of something which would prevent Powell from being deprived of the property by Wade.

There was nothing which could be this something except a bill in which not only Powell, but Wade also, should be a defendant; and a bill which should be accompanied by an injunction against them both, to prevent the one from depriving the other of the possession of the property.

As between Mrs. Powell and Wade then, also, the bill was necessary to enable her to obtain the possession of the trust property.

The necessity for the bill becomes the more manifest to us, if we bear in mind that Powell was insolvent, and that a portion of the trust negroes were such as Mrs. Powell was entitled to the possession of specifically.

[2.] There was, therefore, equity in the bill as against both Powell and P. L. Wade.

[3.] And this equity was such as was sufficient to authorize the granting of the injunction as a part of the interlocutory relief to which the plaintiff was entitled.

As to these two defendants, then, we think that there was equity in the bill, and equity to authorize the granting of the injunction; and, of course, equity to make that injunction perpetual on the hearing.

But if the case was such that Mrs. Powell was entitled to have this extent of relief against Wade, it was such that she was entitled to have against him the whole extent of relief which the case called for. When equity gets possession of a case for partial relief, it gives complete relief.

Mrs. Powell was therefore entitled to have from Wade and from Powell, his agent, a general account of the trust; and also, to have Wade removed from the trusteeship, for the bill states a case of breach of trust on his part.

But as to Jesse Wade, we see nothing in the bill which makes out a case of any sort against him. The bill contains

this allegation: "That the said Peyton L. Wade has, by himself and his agents, had the care and management of the said trust estate to the present time, by himself and his agents, Jacob S. P. Powell and Jesse Wade." And this is the only allegation which it contains, with respect to him. And this fails to say that he is in the possession of any of the trust property or any of the proceeds of it, or that he ever was, or to say any thing else that would make out a case for relief against him. As to him, therefore, we think it true that there is no equity in the bill, and consequently, that as to him the demurrer should have been sustained.

The only remaining question in the case is, whether Peyton L. Wade could be sued in Murray County, if he resided in Scriven County or in Whitfield County.

And we think that he could. The case was one in which both P. L. Wade and Powell were necessary parties, in order to insure the certainty of a part, if not the whole, of the relief to which the complainant was entitled. Of them, one resided in Murray, and the other in Scriven or in Whitfield. The suit, therefore, had to be in one or another of these counties; and there appears no reason why it should be brought in either of the latter two rather than in the first.

This case is not at all like that of *Jordan vs. Jordan & Carter*, which has been so often before this Court. In that case, neither defendant resided in the county in which the suit was brought; and the principles recognized in that case are such as sanction the propriety of the bringing of this suit in Murray County.

We therefore affirm the judgment of the Court below, except so much of it as relates to Jesse Wade.