## McArthur & Griffin *vs.* Matthewson & Butler.

1. To entitle complainant to enter a court of equity to seek relief against trespassers on land, it is not necessary to show a perfect title thereto. A *prima facie* title is sufficient in the absence of a better outstanding title.

2. Where it is sought to set aside deeds made by an administrator, as well as the grant of administration, on the ground that they were both fraudulently procured, he is a necessary and substantial party, and the bill may be filed in the county of his residence.

3. A bill to set aside and cancel a deed is not such a suit respecting titles as must be brought in the county where the land is situated.

4. Equity has jurisdiction to set aside a judgment granting letters of administration, where such judgment was obtained by fraud.

Equity. Injunction. Title. Jurisdiction. Judgments. Administrators and Executors. Before Judge SNEAD. Richmond County. At Chambers. October 5th, 1881.

Reported in the decision.

ROBERTS & DELACY; L. A. HALL; BARNES & CUM-MING, for plaintiffs in error.

J. S. & W. T. DAVIDSON; KIBBEE & MARTIN, for defendants.

SPEER, Justice.

Matthewson & Butler filed their bill for injunction, relief, etc., in Richmond superior court against Michael McDonald, administrator upon the estate of James Mc-Donald, of Richmond county, a non-resident intestate of this state, Walter J. McArthur, of Montgomery county, and John W. Griffin, of Dodge county, in which by the bill, answer, and evidence submitted on the hearing for an injunction, etc., the following history of the case is made to appear:

In the year 1818 the state of Georgia granted to Mc-Donald, Pope & Co., of Richmond county, Georgia, about 178 or 180 lots of land, each containing 202½ acres, all lying in what was then Wilkinson county. It nowhere appears who composed the firm of McDonald, Pope & Co. It appears that Pope removed from Richmond county to Jackson county, Florida, about 1820, and married there in 1823. That at the time of his marriage he had in his possession all of the original plats and grants to the lots aforesaid, and so held them till he died in 1837 in Florida. His widow had heard him say he was one of the firm of Mc-

Donald, Pope & Co., and did business in Richmond county.   That he always claimed to be sole owner of the lots.   That Pope left surviving him said widow and a number of children, and they continued to hold the plats and grants until turned over to these vendees, believing, as the heirs at law of said Pope, they were the sole owners of these lots.   That, by powers of attorney duly executed 6th December, 1852, and 4th January, 1858, the widow and children, then in life and all of age, authorized W. S. Pope, Jr., to sell and dispose of all of said lots, and to convey them in fee simple and give warranty titles ; that under these powers Pope, Jr , for himself as an heir at law, and as attorney in fact for his mother, brothers and sisters, sold and conveyed 137 of said lots, aggregating 27,742½ acres, by warranty deed of June 20th, 1860, for $4,110.00, to W. W. Harrell, J. J. Hamilton, Oren C. Horn and Seaborn M. Manning, then of Pulaski county, Georgia, and delivered to them the plats and grants.   At that time said lots lay in Pulaski, Laurens and Telfair counties.   That the price paid was all the lands were worth, and the sale was in good faith—one party believing he was conveying, and the others that they were buying, an absolute title. The deed and the powers of attorney were duly recorded. The other evidence of Hamilton and others corroborated the good faith of the purchase.   These vendees sold some of the lots to persons who went into possession and are still in possession.   They also went into possession of some of said lots, improved them, and still hold possession. On July 10th, 1863, Harrell and his co-vendees sold by warranty deed to G. H. McLaughlin & Co., a firm of Richmond county, Georgia, for $34,931.25, 115 lots of this land, aggregating 23,287½ acres.   The price paid was all the land was worth at the time.   The sale was in good faith by each party, each supposing an absolute title passed.

McLaughlin & Co's. deed was recorded in Laurens county, in Pulaski and Telfair counties in 1866, and they

have paid taxes on said lands since. The county of Wilkinson was sub-divided, and other counties formed of it and other counties. February 15th, 1866, McLaughlin & Co., by warranty deed, sold 18 of these lots to L. S. Dunn, of New York. In July, 1868, G. H. McLaughlin died, having devised all of his estate to his sister, Mrs. Sarah V. Butler, one of the complainants. J. O. Matthewson, the other complainant, constituted the other member of the firm of G. H. McLaughlin & Co. Matthewson & Butler sold sundry lots to various persons, whose names and prices paid are set forth in the bill, who went into possession, and still hold possession. They appointed Harrell their agent, who looked after said lands, who sold some and leased others.

With full knowledge of all these facts, McArthur & Griffin, a firm doing a lumber and real estate business at Eastman, in Dodge county, and composed of respondents, W. T. McArthur, of Montgomery county, and John W. Griffin, of Dodge county, conceiving that they had discovered a flaw in the title conveyed by the Popes, sent John W. Griffin, in 1879, to Augusta to work up the case. He went first to Mr. John McDonald, a cotton merchant, and a member of an old family in Augusta, but finding he would have nothing to do with it, he hunted further and finally found Michael McDonald, an Irishman, who came to Augusta in 1857 as a barrel maker, and who is now about 47 years old. After questioning him, and being told that he had several brothers, one named James, none of whom he ever saw but once, and that was in New York, and that he only saw them then for about ten minutes, and had never even heard of them since, Griffin informed him that he had struck the right man, and invited him to go with him to the hotel where he (Griffin) was stopping. When there, Griffin told McDonald that he knew where there was some land belonging to his brother James, and offered him $400.00 for his interest. Upon condition that it was all right and would get him into no

scrape, McDonald accepted.   A formal contract was then
drawn up, dated February 10th, 1879, and signed by
McDonald and Griffin, whereby the former agreed to take
out letters of administration upon the estate of James
McDonald and then to sell "whatever title the court of
ordinary would authorize him to convey" to John W.
Griffin, or to such person as he might designate, and for
such sale to receive $400.00, and John W. Griffin to pay
all the costs of administration.   In pursuance of this conspi-
racy, McDonald, on April 5th, 1879, with $15.00 sent him
by McArthur & Griffin, went to Dodge county, and was
then by McArthur & Griffin taken to Montgomery county,
where only five of the lots lay, and on April 7th, 1879,
letters of administration were granted to him, and McAr-
thur & Griffin became sureties on his administrator's
bond in the sum of $1,000.00.   The petition alleges that
James McDonald died intestate about 1872, a non-resi-
dent of Georgia, and possessed of about $400.00 in real
estate.    Appraisers were appointed, McArthur's brother
being one of them, and they appraised the estate April
10th, 1879, as consisting of 176 lots of 202½ acres, aggre-
gating 35,640 acres at $25.00 per lot, estimating one-half
interest at $2,200.00.   McDonald, McArthur and Griffin
returned to the latter's office at Eastman, Dodge county,
where McDonald, on April 8th, 1879, signed a deed as
administrator on its face, dated May 6th, 1879, and pur-
porting to be for the consideration of $2,212.50, whereby
he undertook, in pursuance of an alleged order of the
court allowing him to sell at private sale, to convey to
McArthur & Griffin an undivided one-half interest in 172
of said lots of the Pope land as the property of James
McDonald, the alleged intestate, and lying in Laurens,
Pulaski and Dodge counties.   W. B. Whiden, the attest-
ing notary public to this deed, being a clerk of McArthur
& Griffin, and the other witness being Y. R. Griffin.
McDonald then received a check from McArthur & Grif-
fin for $400.00, as agreed upon in the contract of Febru-

McArthur & Griffin vs. Matthewson & Butler.

ary 10th, 1879, and came home. On June 10th, 1879, Griffin came to Augusta and succeeded in getting McDonald, as administrator, to sign three other deeds, one covering 120 lots in Laurens, Dodge and Telfair counties, and purporting to be for $2,212.50 consideration, and one for 7 lots in Dodge county, purporting to be for $56.00 consideration, and the third for 48 lots in Laurens, Dodge and Pulaski counties, and purporting to be for $1,000.00 consideration. Four hundred dollars, however, and expenses of administration, amounting, so far as shown, to about $60.00, is all that ever was paid. The deed purporting to be dated May 6th, 1879, was recorded in Dodge county only April 1st, 1880, and the $56.00 deed of June 10th, 1879, was recorded in Dodge county March 25th, 1880. The second deed for $2,212.50, of June 10th, 1879, and the $1,000.00 deed of June 10th, 1879, were both recorded in Dodge county only September 30th, 1881, after the granting of the restraining order in this case, and two days before the hearing. McDonald has never made any returns as administrator, or done any other act than to sign the deeds, as he considered the whole matter closed after he received the $400.00, his understanding being that it was paid to and belonged to him for his interest in the land. He simply did whatever he was directed to do by John W. Griffin, in order to perfect his title to the interest sold. He never read any of the papers, and had no idea how much land there was, or its value, but signed such papers as he was directed to sign, upon Griffin's assurances that it was all right and would get him into no trouble, he (McDonald) believing that, at most, he was only selling a small quantity of wild land which no one claimed. As soon as he learned that the land was claimed by Matthewson & Butler, and that it consisted of many thousands of acres, he saw he had been led into a trap, and he determined to have nothing more to do with it, and made a full disclosure of the whole affair. Under the deeds from McDonald, administrator,

v 67—10

McArthur & Griffin have taken possession of a large number of complainants' lots, and are daily leasing and renting the same and appropriating the entire proceeds. They justify themselves upon the ground that as complainants have sold several of the lots, they proposed to take possession of enough to get even.

In October, 1880, Griffin came to Augusta and tried to get McDonald to swear to returns, as administrator, so as to be discharged. But as the returns were false, McDonald refused, and Griffin said as he was security on the bond he would make them himself. McArthur & Griffin do not pretend to dispute the circumstances under which the administration was procured, or the amount paid McDonald, but nevertheless swear they acted in good faith, and believed they were buying a good title to a one-half interest in the Pope lands. They rely upon complainants' inability, as they claim, to establish any title, and they produced many affidavits showing that some of the lots had never been occupied, and that some were held by persons who claim to hold adversely to complainants. Some of these affidavits are made by persons who actually hold under complainants' vendees, and McArthur & Griffin are themselves in possession of some of the lots which they purchased from the complainants' vendees. Since the opening of the Macon and Brunswick Railroad, passing directly through these lands, they have greatly appreciated in value for lumber and turpentine purposes, as well as for farming lands, and are reasonably worth from $200 to $400 per lot. Said lands are becoming daily more valuable, and the increase is not calculable in dollars. Complainants have been greatly damaged by the trespasses committed, and constantly continued by McArthur & Griffin, and by reason of the cloud cast upon the title by the record of the before-mentioned administrator's deeds, have been, and are still delayed and hindered in the sale, use and enjoyment of the property. Griffin stated to Harrell, one of McLaughlin & Co's vendees, that he (Griffin) knew

Matthewson had a good title to the Pope lands, but his object in getting out the administration was to make something by buying or selling out. Griffin in 1876 or 1877, actually took Harrell, who at that time was acting as agent for Matthewson and Butler, to show him lots upon which squatters were settling. The lands owned by complainants lie now in the counties of Montgomery, Dodge, Telfair, Pulaski and Laurens. Defendant (McArthur) resides in Montgomery county, Griffin in Dodge county, and Michael McDonald, administrator, in Richmond county.

Complainants therefore filed their bill in Richmond county, praying that the administration in Montgomery county by Michael McDonald be set aside, and declared void for fraud; that his deeds be likewise declared fraudulent, and be delivered up to be canceled as a cloud upon their title, and that he be required to account and pay over to complainants all moneys received by him from the sale of their lands. That McArthur & Griffin be restrained from further leasing and trespassing upon complainants' lands, and that they account and pay for the damage already done, and be required to deliver up said deeds to be canceled, as fraudulent, and as clouds upon complainants' title and also to protect themselves, because of threatened suits against complainants upon their warranty deeds to lands already sold, because of the alleged McDonald title set up by McArthur & Griffin, and for general relief. The value of the half interest which McDonald pretended to sell in 1879 was reasonably worth $20,000.00, and yet McArthur and Griffin bought it for $400. It nowhere appears that the administrator has sold or disposed of the property in Montgomery county, about five lots in the eleventh district.

It was by virtue of these five lots, lying in Montgomery county, that jurisdiction for administration was claimed in that county. The bulk of the property lies in Dodge county, where McArthur & Griffin do business. Harrell and the other vendors of G. H. McLaughlin & Co., also reside in Dodge county.

To this bill respondents demurred :

(1.) Because the superior court of Richmond county has no jurisdiction to vacate a judgment rendered by the court of ordinary of Montgomery county, or to enjoin a legal proceeding therein.

(2.) Because the superior court of Richmond county has no jurisdiction of respondents McArthur & Griffin, one a resident of Montgomery and the other of Dodge county, who are the only respondents against whom substantial relief is prayed.

(3.) Because complainants have an adequate remedy at law.

(4.) Because there is no equity in complainants' bill.

(5.) Because Richmond superior court has no jurisdiction of respondents on the subject matter of the suit, as the lands do not lie in said county, and this suit is in respect to the title of said lands.

(6.) Because the superior court of Richmond county has no jurisdiction of Michael McDonald as administrator, as such administration is in Montgomery county, Georgia.

On hearing said bill, on the demurrer, answers and evidence, the court overruled the demurrer and ordered the injunction to issue. To which ruling and judgment respondents, McArthur & Griffin, excepted and assigned the same as error.

1. One of the main grounds relied on to sustain the demurrer filed to this bill, is that complainants have not set forth, either by their allegations or proof, a title to these lots of land, touching which said injunction is sought.

The bill alleges that these lots of land were in 1818 granted by the state to McDonald, Pope & Co. ; that Pope retained these grants during his life, claiming said lands up to his death in Florida in 1837. That he was one of the firm of McDonald, Pope & Co. After his death intestate, his heirs at law, consisting of his widow and children, then in life and all of age, by power of attorney duly re-

corded, in good faith and for full value, conveyed by warranty deed 137 of said lots, aggregating 27,742 acres of land, to Harrell, Hamilton, Horn and Manning, said deed being dated June 20th, 1860, and at the same time delivered to them the plats and grants of said lots.

The bill further alleges that on the 10th July, 1863, Harrell and his co-vendees sold by warranty deed, in good faith and for full consideration, 115 lots of this land to McLaughlin & Co. (one of whom is a complainant). Since said sale complainants have sold to various persons some of said lots in dispute, who went into possession, and are still in possession, and complainants have been controlling balance of said lots, and paying taxes thereon since their purchase to the present. As the demurrer admits these allegations to be true, we do not see why the complainants have not shown *prima facie* at least such a title or interest in these lands as entitles them to a standing in court. A *prima facie* title is all that is necessary, at least until a better outstanding title is shown. In a suit for an injunction complainants, on showing they have *prima facie* even an interest in the property, may maintain their bill. In 53 *Ga.*, 454 and 685, this court said "that a plaintiff in ejectment might recover, though he may himself show no title to the jury against one who acquires possession subsequently by a trespass without any lawful right whatever." It is not necessary even in ejectment suits that plaintiff should have the entire title, much less in equity. An undivided interest will support title. 3 Wall., and an equitable title is sufficient to maintain or defeat an action. 39. *Ga.*, 91; 31 *Ib.*, 278; 30 *Ib.*, 553, 652; 29 *Ib.*, 171, 485; 27 *Ib.*, 372; 26 *Ib.*, 132. A title which is apparently good is sufficient against a mere wrong-doer or trespasser. 3 Wait, 13–20; 15 La., 76. We do not mean to be understood as holding that the complainants have established by their evidence a good title, but we think the allegations in the bill, show they have *prima facie* such an interest in the property as entitles them to a hearing.

2, 3. The demurrer further objects to the bill for the reason that the superior court of Richmond county has no jurisdiction over two of the respondents, and that McDonald's residence gives no jurisdiction, since no substantial relief is prayed against him.   The bill is to cancel a deed obtained, as is alleged, by fraud, and which casts a cloud over the complainants' title, and is one peculiarly within the province of a court of equity.   Fraud is the *gravamen* of this bill—it seeks to annul conveyances obtained by fraud, to set aside and relieve against judgments obtained by imposition, and for relief against certain fraudulent practices, which vitiate certain contracts of sale made by defendants.   We hold the administrator is a necessary and proper party to such a bill.   It is his deed sought to be canceled ; his fraudulent contract annulled, and his letters of administration set aside.   It is his act which made possible the fraud committed; without his aid the fraud could not have been perpetrated.   A deed obtained by fraud, which casts a cloud over complainant's title, subjects him to future liability, or present annoyance, and the removal of which is necessary to his present protection, will by a court of equity be decreed to be canceled. 8 *Ga.*, 459; 39 *Ib.*, 533; 44 *Ib.*, 259; 27 *Ib.*, 336.

It has been further ruled that a bill to cancel a deed and to set aside the same, is not such a suit respecting titles to land as requires it to be brought in the county where the land lies.

We are of opinion, therefore, that there is substantial relief prayed in this bill against M. McDonald, of Richmond county, and that the court for this cause, in Richmond county, has jurisdiction over all the respondents 20 *Ga.*, 645 ; 21 *Ib.*, 454; 34 *Ib.*, 53 ; 37 *Ib.*, 346; 61 *Ib.*, 121.

4. One of the objects of this bill is to set aside the grant of the letters of administration by the ordinary of Montgomery county.   To do this equity has jurisdiction. The judgment in such a case may be attacked for fraud,

and letters set aside, as has been decided in 9 *Ga.*, 247; 37 *Ib.*, 265, and 57 *Ib.*, 43.

These authorities cited, we think, are decisive as to the the grounds of demurrer to this bill, and we see no error in the judgment of the court overruling the same.

Taking the bill, answers and voluminous evidence submitted on the hearing of this injunction—recognizing the fact as we do under the law of this case, that it is one proper for the jurisdiction of a court of equity, that it is pending in a proper jurisdiction, and in passing upon the questions of fact that may be conflicting, the chancellor is entitled to a discretion in his judgment that we should not disturb, unless abused—and we may well let the judgment pronounced by the court below as to granting this injunction remain until the final hearing of this cause before the tribunal appointed to pass upon the facts when therein presented.

Let the judgment below be affirmed.