## CLAYTON, administratrix, *v.* STETSON.

Since, under the constitution of this State, suits respecting titles to land must be brought in the county where the land lies, and equity suits must be brought in that county in which a defendant resides against whom substantial equitable relief is prayed, if a suit be brought by a debtor against his creditor to cancel a conveyance in pursuance of which the latter has been admitted into possession, such action must be brought in the county of the residence of the creditor. Nor can a suit to recover land ( the right of the plaintiff being predicated upon a perfect equity only ) be maintained to recover possession, unless the person against whom the equity is sought to be established resides in the county where the land in controversy lies.

Argued June 2, — Decided July 8, 1897.

Equitable petition. Before Judge Smith. Pulaski superior court. August term, 1896.

*Clayton & Clayton, L. C. Ryan* and *J. H. Martin,* for plaintiff.

*A. C. Pate, Hardeman, Davis & Turner* and *George Bright,* for defendant.

ATKINSON, J. The questions in this case arose upon the following state of facts.

Victoria V. Clayton, administratrix with the will annexed of H. D. Clayton, deceased, filed in the superior court of Pulaski county her equitable petition against James D. Stetson, for the recovery of certain lands in that county and the rental thereof, and for other relief. The petition alleged as follows: On April 11, 1878, James S. Leith, who resided in the town of Hawkinsville, Pulaski county, Georgia, was the owner in fee of a certain lot of land in said county (describing it), and for the purpose of improving the same, borrowed from William C. Hamilton $7,793.94, and proceeded to erect thereon a large two-story brick building with four stores on the lower floor and a hotel above, using the sum so borrowed, together with a large sum of money obtained from other sources; and to secure such borrowed money, gave to Hamilton a warranty deed to such property. Hamilton died, leaving as his only heirs at law his widow Mary Ann Hamilton, and his daughter Elizabeth Hamilton. In the year 1881 Leith made arrangements with James

D. Stetson, who then lived in Hawkinsville, but who now lives in Macon, Bibb county, Georgia, to borrow from him the money necessary to take up and pay off the claim of the Hamilton heirs against him; and in pursuance of this arrangement, Stetson paid to the Hamilton heirs for Leith the amount due by Leith to them, on or about August 2, 1881, and to secure himself for the money so paid out, took from Mary Ann and Elizabeth Hamilton their warranty deed to said property. The amount that Stetson claims to have paid to the Hamilton heirs for Leith, and stated as the consideration in the last mentioned deed, is $10,890.72.   On July 30, 1881, as a part of the arrangement for the loan of said money by Stetson, Leith made to Stetson a power of attorney giving to him control of all of said property, together with its rents, issues and profits; and Stetson, as additional security, demanded that Leith should enter into an agreement with him to pay him (Stetson) $1,000.00 and all expenses, and attorney's fees, for obtaining for Leith the sum necessary for him to take up the claim of the Hamilton heirs; that said $1,000.00 should be paid out of the rental of said property, in addition to eight per cent. on the money borrowed; to allow Stetson $250.00 per annum unless the gross revenue from the property should exceed $2,500.00 per annum, and in that event Stetson to receive ten per cent. commissions on the gross revenue; and in the event Stetson sold the property, to pay him ten per cent. on the gross amount of the sale and all expenses incurred; and that the revenue from the property, after paying interest, insurance, taxes and commissions, should be applied to either repairs or improvements on the property, or to reducing the principal of the debt, as Stetson preferred. · The only amount Leith was justly due to Stetson was $7,793,94, with interest thereon at eight per cent. per annum from April 11, 1878, it being the consideration expressed in the deed of Leith to Hamilton, above referred to.   Leith was able and competent to look after the preservation of the property and the collection of the rents therefrom; and the arrangement specified in the power of attorney and agreement by which Stetson was to receive $1,000-.00 as commissions and $250.00 per annum for the collection

of rents, was a device to avoid the usury laws of the State, and any claim on the part of said Stetson to said $1,000.00 and $250.00 per annum is usurious and illegal. On August 2, 1881, immediately after the execution of the deed from Mary Ann and Elizabeth Hamilton to Stetson, he took possession of the property under said power of attorney and agreement, and has collected all of the rentals arising therefrom from that time to the present; and Stetson is now in possession of the property, and in the enjoyment of the issues, rents and profits thereof. There are on the property, in addition to the brick stores and hotel hereinbefore referred to, two large frame storehouses, and the value of the rental of said property is $2,500.00 per annum for every year since Stetson went into possession up to the present. Petitioner's testator and Leith were relatives and lifelong friends; and Leith, on February 14, 1883, for and in consideration of natural love of and affection for said testator and $1.00 in hand paid, executed to him a warranty deed to said property. At the time of the execution of the deed last mentioned, Leith transferred in writing to said testator, "for value received," all his right, title and interest in the above mentioned agreement between himself and Stetson. Leith died in Pulaski county, December 3, 1884, and there has been no administration on his estate. H. D. Clayton died in the State of Alabama, October 13, 1889, and petitioner, his executrix, resides in Barbour county, Alabama. She as executrix is the true owner of said property. The rentals arising therefrom and collected by Stetson have long since paid off and discharged the amount borrowed from Hamilton and all just claims and charges of Stetson against Leith, leaving a balance of rentals in the hands of Stetson arising from said property and justly belonging to petitioner, amounting to $12,000.00, or other large sum. The petition concludes as follows: "Petitioner brings this her complaint for said land and rentals, and prays that said power of attorney be canceled; that said land be decreed to be the property of petitioner as executrix as aforesaid, and that said Stetson be decreed to deliver to petitioner the full and quiet possession of the same; that said Stetson be decreed to pay to petitioner the sum of

$12,000.00, or such amount as shall be found justly due to petitioner for the rental of said property; for general relief; and for process against said Stetson."

Attached to the petition and referred to therein as exhibits were copies of the deeds therein mentioned, the power of attorney from Leith to Stetson, and the additional agreement between Leith and Stetson. The power of attorney recited that it was a continuing and irrevocable power, not terminable at the death of the maker, and terminable only by and with the consent of said Stetson; and that a good and valuable consideration was paid therefor by Stetson to Leith. The other agreement between Leith and Stetson was dated August 1, 1881, and was in substance as stated in the petition, and further provided that said power of attorney should be irrevocable by Leith until the sum furnished by Stetson to take up the claim of the Hamilton heirs and all expenses incurred in the collection thereof, and all commissions mentioned in this agreement, were paid in full, leaving no claim whatever due Stetson, either on the loan, expenses or commissions, or for any debt contracted by Stetson for the improvement of said property or repairs thereon.

To this petition a demurrer was filed upon various grounds, among others, that the petition shows that the superior court of Pulaski county has no jurisdiction to try said case, nor of the person of the defendant. Upon the filing of this demurrer, the plaintiff amended the petition by striking out all the prayers contained therein, except the prayer for the premises sued for and the rental thereof. The defendants then demurred anew to the declaration thus amended, upon the additional ground, that since amended the petition stands only as an action of ejectment for the premises in dispute and mesne profits, and should be dismissed for the reason that it shows title out of J. S. Leith, the grantor of the plaintiff, prior to the grant or gift from said Leith to plaintiff's intestate; upon the further ground, that the plaintiff does not offer to do equity by tendering to the defendant the amount of money due by said Leith to defendant. The court sustained the demurrer generally, and dismissed the declaration.

It will be seen, from an examination of the petition, that it was framed in the first instance with the view of obtaining equitable relief upon an equitable cause of action, and its prayers were all appropriate to the grant of the character of relief sought. By the amendment the prayers of the petition were stricken, save only those which related to a recovery of the possession of the property with mesne profits; thus, through the instrumentality of a species of legal legerdemain, transforming the suit from an equitable action to a complaint for land, such as would have been adopted had the suit been instituted in the first instance as a statutory action of ejectment only. Inasmuch as no exception was taken to the allowance of this amendment, we will assume that it was properly allowed. There was no offer to strike from the declaration the statements of fact upon which the plaintiff relied to assert her equity; and therefore we will consider whether, upon the state of facts presented to us in the record, the plaintiff is entitled to recover without invoking the aid of equitable principles, which she has expressly disclaimed by striking from her petition the prayers appropriate to the grant of equitable relief.

The suit was brought in the county where the land lies, but the defendant resided in another county. If the plaintiff, without resorting to the powers of the superior court as a court of equity and without invoking equitable relief, can, upon her legal title, recover, the suit is well brought in the county where the land lies; but if, in order to vest herself with a legal title upon which she can recover at law, it becomes necessary at first to assert an equity as against the person invested with the legal title, then we conclude that the action should have been brought in the county wherein the defendant resided.

The superior court, by par. 1, sec. 4, art. 6 (Civil Code, § 5842) of the constitution of this State, is invested with exclusive jurisdiction to try cases respecting titles to land, and as well equity causes. Par. 2 of the same section and article (Civil Code, § 5843) provides, that the General Assembly may confer upon the courts of common law all the powers heretofore exercised by courts of equity in this State. This has been done

by appropriate legislation. Par. 2, sec. 16, art. 6 of the constitution (Civil Code, § 5870) provides, that cases respecting titles to land shall be tried in the county where the land lies, except where a single tract is divided by a county line, in which case the superior court in either county shall have jurisdiction. Par. 3 of the same section above referred to (Civil Code, § 5871) provides, that equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed.

When we come to consider these two sections together, we conclude that the equitable and common-law jurisdictions of the superior court are merged, and that such a court may, upon the trial of a given case, apply either equitable or common-law principles in determining the rights of the parties. If there were no further limitation upon the jurisdiction of the court with respect to the several classes of rights which are authorized to be adjudicated therein, mere matters of procedure and pleading could be accommodated to the circumstances of each particular case; but where, as in the present case, if the cause of action be an equitable one, it must be brought in the county of the defendant's residence, or if the plaintiff relies only upon the assertion of a common-law right, it must be brought in the county where the land lies. The two sections of the constitution last above quoted operate as limitations upon the jurisdiction of the superior court, which are to be defined, in the one case, by the place of the residence of the defendant, and in the other, by the place of the situation of the land. According to the declaration in this case, the plaintiff showed that the legal title was in the defendant, who was in possession; and, therefore, this of itself was sufficient to defeat her right to recover. In order to reinvest herself with the legal title, it was absolutely indispensable that there should have been an accounting upon equitable principles between her and the defendant, and she seeks in this proceeding indirectly to bring about an accounting which the defendant can not be held to make elsewhere than in the county of his residence. If the defendant, against whom a perfect equity is sought to be enforced happens to reside in the county in

which the land lies, the suit may be well brought in that county; and whether treated as a common-law suit, invoking only common-law remedies, or as a suit setting up an equitable cause of action, in which equitable relief is likewise sought, the superior court, exercising a combined jurisdiction, both legal and equitable, under our present system of procedure, would be authorized, without reference to the form of action, to grant full relief between the parties; but if the defendant does not reside in the county where the land lies, and it is sought as against him to assert equities, by the letter of the constitution, and as well by its spirit, he can not be held to answer such an action save only in the county of his residence, even though in the adjustment of the equities the title to lands may be indirectly involved. The plaintiff relied, in the present case, upon a legal title which could be asserted in an ordinary common-law proceeding only upon an adjustment of the equities between her and the defendant. The adjustment of such equities being a preliminary indispensable to the prosecution of the action as a common-law suit to recover land, and it appearing from the petition itself that the plaintiff has not reinvested herself with the title through the medium of appropriate proceedings upon equitable principles, and the defendant confessedly not residing in the same county in which the land lies, it follows that the court did not err in dismissing the declaration, first, for the reason that the plaintiff showed title out of herself; and second, for the reason that, as against the defendant, no equitable relief which would reinvest her with the title could be granted against the defendant in the county in which the suit was instituted. We are thus led to the conclusion that the court properly dismissed on demurrer the plaintiff's action.

*Judgment affirmed. All the Justices concurring.*