## BROWN *et al. v.* MARTIN *et al.*

An action under the Civil Code (1910), § 3666, by a remainderman against a life-tenant to have the estate of the latter declared forfeited and the remainderman put in possession, because of waste committed by the tenant, is a suit "respecting titles to land," and the venue thereof is the county in which the land involved is located. None of the grounds of demurrer were well taken, and the court erred in dismissing the petition.

JANUARY 9, 1912.

Complaint. Before Judge Frank Park. Calhoun superior court. June 5, 1911.

Herbert Brown and others, as remaindermen under a certain deed, brought an action against Mrs. Madden and R. B. Martin, to declare a forfeiture of the life-estate conveyed by the deed, and to acquire possession of the property because of alleged waste committed. By the terms of the deed the property was conveyed to Mrs. Madden for life, for the comfortable maintenance of herself and children, and at her death to go to the children in fee simple. The plaintiffs are the children just referred to. The original petition made substantially the following averments: On June 16, 1908, a decree was taken, subjecting the interest of Mrs. Madden in the property named in the deed to a certain indebtedness, under which decree her life-estate was sold at public outcry, and was bought in by her; but she failing to comply with her bid, under the terms of the decree "title to the said property went to various creditors, subject to a fixed charge for the maintenance of petitioners." The defendant Martin was one of the creditors, and went into possession of the land, holding the life-interest only as

held by Mrs. Madden, and subject to the liabilities imposed by law on her and entitled to only such rights as she had. The land is located in Calhoun county. Mrs. Madden is a resident of that county, and Martin is a resident of Randolph county. Various acts of waste have been committed by Martin, and allowed by him to be committed by others, consisting of working the timber for turpentine purposes, cutting, selling, and destroying valuable timber in large quantities. Mrs. Madden, the life-tenant, fails and neglects to prevent these acts of waste, and both defendants have been guilty of such acts "as to forfeit her or his interest in said land, and cause said estate to vest absolutely in fee simple in petitioners," and they elect to claim immediate possession. The prayers of the petition are, that the life-estate be declared to be forfeited; that Mrs. Madden and Martin holding under her be decreed to have forfeited their interest in said estate, and that plaintiffs recover the land, with the title, possession, and right of possession vested in them free of condition, together with the rental value of the land since the filing of the suit. An amendment to the petition was allowed, in which it was alleged: Mrs. Madden leased to one Sealy about 75 acres of the land for the purpose of working turpentine thereon, and Sealy extracted the turpentine from the trees and carried it away, and cut timber and converted it into barrel-staves, and used large quantities of timber for making turpentine, which "act was done by Mrs. Madden with the knowledge and assistance in the year 1906 of R. B. Martin." Mrs. Madden and Martin conspired and confederated, while she was life-tenant, to sell and dispose of the real estate, and in furtherance of that intention Martin leased the land and sold said timber for Mrs. Madden. "Said Madden permitted said Martin to waste said real estate, by neglecting to care for same and neglecting to prevent the cutting of same. Said Madden has committed voluntary waste, and in a manner evidencing entire disregard of the rights of the next taker, by cutting said timber, allowing it to die and fall upon the ground and rot. Said Martin had full knowledge of this fact and knew that said waste was permissive and voluntary, and took title to said land under a decree with full knowledge of the facts that said Madden had committed said acts." Martin has continued the acts of waste, and his title was taken subject to full knowledge that Mrs. Madden had forfeited

her entire life-estate. A demurrer was filed by Martin, setting up the following grounds: 1. Because no cause of action, either legal or equitable, is set forth in the petition. 2. Because no such acts are alleged in the petition as will justify the court in decreeing a forfeiture as prayed. 3. Because no copy of the decree under which it is alleged defendant holds title is attached to the petition, nor does it appear with sufficient fullness under what title the defendant claims. 4. Because the land referred to in paragraph 1 of the petition is not described with sufficient fullness or definiteness. 5. Because the petition shows that the superior court of Calhoun county has no jurisdiction of this defendant. The court rendered judgment as follows: "The plaintiffs having amended their petition, and said amendment having been allowed, and the within and foregoing demurrers having been renewed to said petition as amended, it is, after argument, ordered that said demurrers be sustained and the petition as amended dismissed, both parties by agreement treating the decree referred to in the petition as being a part of and attached to the petition." To this judgment the plaintiffs filed their bill of exceptions.

*M. C. Edwards,* for plaintiffs. *Hawes & Pottle,* for defendant.

Hill, J. (After stating the foregoing facts.) There is no merit in the 1st and 2d grounds of the demurrer. Acts of waste on the part of the life-tenant, of the character alleged in the petition, would give the remaindermen the right to bring an action to declare a forfeiture of the estate of the life-tenant, as provided for in the Civil Code (1910), § 3666. In view of the recital of the court in his order quoted in the statement of facts, that by agreement both parties treated the decree referred to in the petition as though it were a part thereof, the third ground of demurrer will be considered as having been waived. It might be here remarked, however, that this decision, in its entirety, is made without reference to the decree; as it does not appear to have been actually attached to the petition and was not brought to this court. This statement is made in view of the fact that the plaintiffs may have been parties to the decree and bound thereby, and it may have contained provisions which would affect their rights with respect to the present litigation. There is no merit in the 4th ground of demurrer. Paragraph 1 of the petition gives the numbers of the land lots involved, and this description, taken in connec-

tion with the allegation elsewhere in the petition that the property is situated in Calhoun county, sufficiently identifies the land referred to, or can be made to do so when aided by parol testimony.

This brings us to the 5th and last ground of the demurrer, by which the defendant Martin challenges the jurisdiction of Calhoun superior court with respect to him. Counsel in their briefs largely deal with the case on the theory that it is an equitable proceeding and should be located in the county of his residence, because he is the defendant against whom substantial relief is prayed; however, counsel for the plaintiffs in error does insist that the suit is one respecting title to land, and therefore properly brought in Calhoun county, where the land in controversy is situated. In order to determine the venue of the suit, it is important to classify the action. While the petition does not in terms so state, the suit evidently is brought under the statute of this State providing for a forfeiture in behalf of the remainderman against the life-tenant in the event the latter wastes the estate, which statute is hereinafter copied. Originally at common law an action of waste was maintainable only against the holder of the legal estate of a guardian in chivalry, or tenant in dower or by the curtesy, on the theory that, this class of estates being creatures of the law, the law would protect the inheritance of the heir by affording him a remedy for waste committed. No action could be maintained against the holder of an estate for life or for years, since they were created by the demise or lease of the owner, and it was deemed that his failure, when granting the estate, to provide against waste by the tenant constituted an act of neglect on his part, the consequences of which he would be left to suffer. 2 Bl. Com. 283. The statute of Marlbridge (52 Henry III, c. 23) extended the common-law liability so as to make it apply to tenants of the last-named class and to make them liable for full damages resulting from waste; and the statute of Gloucester (6 Edward I, c. 5) gave a more stringent remedy in such cases by a writ of waste, under which the tenant was liable to forfeiture of the thing wasted and treble damages. 2 Bl. Com. 283-284; 1 Reeves on Real Property, § 558; *Roby* v. *Newton,* 121 *Ga.* 679 (49 S. E. 694). In *Parker* v. *Chambliss,* 12 *Ga.* 235, it was held: "In this State, a tenant in dower is liable for waste committed on the estate, but she does not thereby forfeit her estate and treble damages, as pro-

vided by the statute of Gloucester. The remedy against her is by action on the case, in the nature of waste, to recover the actual damage done to the estate; or by an injunction to restrain her from committing waste, when necessary, on a proper case made." In the opinion Judge Warner, after pointing out that we had adopted the common and statute law of England only where "properly adapted to the circumstances of the inhabitants of this State," and quoting Chancellor Kent to the effect that the writ of waste had gone out of use and a special action on the case in the nature of waste had superseded the common-law remedy, on p. 238, said: "We therefore adopt and recognize the principles of the common law, including the statute of Gloucester, so far as to make the tenant in dower liable for waste committed; but reject the harsh and penal remedy provided by that statute." This decision was made in 1852. The Code of 1863, § 2235 (which is identical in language with § 3666 of the Code of 1910), contained the following provisions: "The tenant for life is entitled to the full use and enjoyment of the property, so that in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion. For the want of such care, and the willful commission of such acts, he forfeits his interest to the remainderman if he elects to claim immediate possession." In *Dickinson* v. *Jones,* 36 *Ga.* 97, a case of injunction to restrain threatened waste, it was assumed that the statute of Gloucester was of full force in Georgia; but in *Woodward* v. *Gates,* 38 *Ga.* 205, 212, it was pointed out that the apparent holding in the *Dickinson* case was obiter, no question of forfeiture being there involved, and the true rule in *Woodward* v. *Gates* was declared to be that the effect of the adoption of the Code of 1863 was, that (p. 213), "in case of waste, the tenant for life shall forfeit his interest to the remainderman, if he elects to take immediate possession. But the rule of the statute of Gloucester as to treble damages is not still adopted." And this decision was construed and followed in *Belt* v. *Simkins,* 113 *Ga.* 894 (39 S. E. 430). It appears, therefore, that the present statute, Civil Code (1910), § 3666, quoted supra, is declaratory, and at the same time restrictive, of the common law, and that the right of action thereunder is purely an action at law. What was the nature of this action at common law? Blackstone

.says: "This action of waste is a mixed action; partly real, so far as it recovers land, and partly personal, so far as it recovers damages." 2 Bl. Com. 228; 3 Id. 118. It would seem, therefore, that, our statute having eliminated the treble-damages feature and retained only the forfeiture provided for by the common law, an action brought under such statute would be a real action. The suit in the present case is based purely on this statute. It is in no sense an equitable action and no equitable features are involved. The allegations of the petition, simplified, are to the effect that the life-tenant has been guilty of acts of waste within the meaning of the statute, and thereby rendered his estate subject to the forfeiture, and that the remaindermen elect to have such forfeiture declared and to take immediate possession of the estate. The prayers all seek relief within the bounds of the statute; that is, that the interest of the life-tenant be declared to be forfeited and the plaintiffs be put in possession of the land. True there is an additional prayer that the defendants be required to account for the rental value of the premises since the filing of the suit, but this is merely a prayer for incidental relief with respect to a right which will accrue to the plaintiffs pending the action, provided they succeed in maintaining their claim of forfeiture, which, if declared, would relate back at least to the filing of the suit. There is also a prayer to the effect that the plaintiffs recover the premises free of any charge for the maintenance of the life-tenant, or any one holding under her. The property was conveyed to the life-tenant for life, for the comfortable maintenance of herself and children. The children are the remaindermen and are the plaintiffs in this case. The right of the life-tenant to maintenance from the property is incidental to and part of her life-estate, and would cease with the loss of that estate, in the event a forfeiture thereof be declared. Neither of the prayers just mentioned seeks any relief other than is incidental to an action under the statute. The suit being one in which no equity is invoked, but purely a real action under a statute having its origin in the common law, its venue is not affected by the constitutional provision that equity cases shall be tried in the county of the residence of a defendant against whom substantial relief is prayed. (It might here be remarked that no equity jurisdiction can attach with re-

spect to legal waste, except for purposes of injunction.  5 Pomeroy's Eq. Jur., § 491.)

"Real actions at common law were those by which all disputes concerning corporeal hereditaments were decided." Will's Gould on Pleading, 6. They extended to actions claiming title to rents, commons, and the like, in fee simple, fee tail, or for life, as well as actions for the recovery of the land itself. 3 Bl. Com. 117. Such actions were local in character. 3 Bl. Com. 294. But with us the venue of suits is now controlled by constitutional and statutory provisions. In addition to the constitutional provision regarding equity cases above referred to, the constitution further declares that "cases respecting titles to land shall be tried in the county where the land lies;" and, with exceptions as to specified actions not material here to mention, that "all other civil cases shall be tried in the county where the defendant resides." This suit was brought in Calhoun county, in which the land involved is located. The demurrers were filed by the defendant Martin, who did not reside in that county; and unless the suit was one "respecting titles to land," within the meaning of the constitutional provision referred to above, there was no jurisdiction over Martin. Was it such a suit? Numerous adjudications have been made with respect to what did or did not constitute an action respecting titles to land, but an examination of all the cases we have been able to find discloses that those held not to be of this nature are, in the main, reducible as follows: (a) Those in which the action sounded in trespass and the object was the recovery of damages, or proceedings were for the purpose of injunction to prevent trespass, or an attempt was made to fasten a lien on property—actions in which the question of title was only incidentally involved to the extent of showing a right on the part of the plaintiff to maintain his action. Examples of this class are, *Osmond* v. *Flournoy,* 34 *Ga.* 509; *Powell* v. *Cheshire,* 70 *Ga.* 357 (48 Am. R. 572); *Beckwith* v. *McBride,* 70 *Ga.* 642, and *Wheatley* v. *Blalock,* 82 *Ga.* 406 (9 S. E. 168). (b) Those in which the legal title was out of the plaintiff, and it was sought to cancel a deed, or to obtain specific performance, or in some other way invoke the aid of a court of equity in order to establish the plaintiff's legal title. The following cases fall within this class: *Smith* v. *Bryan,* 34 *Ga.* 53; *Bivins* v. *Bivins,* 37 *Ga.* 346; *Taylor* v. *Cloud,* 40 *Ga.* 288; *McArthur* v. *Matthewson,* 67 *Ga.* 134; *Lowe* v.

*Mann,* 74 *Ga.* 387; *Saffold* v. *Scottish Security Co.,* 98 *Ga.* 785 (27 S. E. 208); *Fulgham* v. *Pate,* 77 *Ga.* 454; *Clayton* v. *Stetson,* 101 *Ga.* 634 (28 S. E. 983); *Ellis* v. *Farmer,* 119 *Ga.* 238 (46 S. E. 105), and *Martin* v. *Gaissert,* 134 *Ga.* 34 (67 S. E. 536). The cases just cited are the progeny of *Smith* v. *Bryan,* supra, in which the ruling was that "A bill in equity to set aside and cancel a deed, on the ground of fraud, is not a case respecting title to land," within the meaning of the provision of the constitution fixing the venue in such cases. In that case, on pp. 62-63, the court used this language: "What, in the intendment of the constitution, are ' cases respecting titles to land?' We understand them to be, cases in which the plaintiff asserts his title to the land in question, and depends for a recovery upon his maintenance of it; or to supply a link in the chain, wanting by reason of accident or other cause. In order to determine whether or not a plaintiff at law or a complainant in equity, who selects his forum upon this clause of the constitution, has made, a case of jurisdiction for the selected court, it is necessary to examine carefully his allegations. What, then, is the gravamen in this case? Is it, at the time of the filing of this bill, the complainant had title to the lands, and that the defendant held possession, or committed waste, or did any act respecting them, without his consent, and in derogation of his title? Not at all. . . His case is not that the title never legally passed from him, nor that it has legally returned to him. His prayer is not that his title, under existing circumstances, may be adjudged good and valid, but that by reason of certain facts, dehors the title, the contract which divested him of it may be annulled, and it restored. The case, then, does not respect title to lands, but is respecting a contract in relation to them, and certain fraudulent practices, which, it is alleged, vitiate that contract." And in *Clayton* v. *Stetson,* 101 *Ga.,* supra, it was said: "If the plaintiff, without resorting to the powers of the superior court as a court of equity and without invoking equitable relief, can, upon her legal title, recover, the suit is well brought in the county where the land lies; but if, in order to vest herself with a legal title upon which she can recover at law, it becomes necessary at first to assert an equity as against the person invested with the legal title, then we conclude that the action should have been brought in the county wherein the defendant resided." In the present case, proof of the

conveyance to them by deed of the remainder interest (giving to them the right of ultimate enjoyment), and proof of acts of waste on the part of the life-tenant such as to create a forfeiture of the intermediate estate within the intendment of the Civil Code, § 3666, quoted supra, is sufficient to show in the plaintiffs a legal title and make out a prima facie case for recovery. We are satisfied that where the plaintiff, as in this case, confines himself to the remedy afforded him by the statute, he is seeking only to maintain a title devolving upon him by law as against the defendant's possession and claim of title under deed, and the suit is one "respecting titles to land," within the meaning of the constitution. The very gist of the action is: whose legal title is superior with respect to the right of possession in presenti—the defendant claiming the life-estate under deed, and the plaintiff claiming it under forfeiture by virtue of the statute? The object of the action is to gain possession, and the right to possession is determined by an adjudication as to which has the superior legal title. We think the case we are considering measures up to the criterion laid down in *Clayton* v. *Stetson* (quoted supra), by which to determine when the action is one respecting titles to land, and that the venue of the suit, as brought, is in Calhoun county. None of the grounds of demurrer were well taken, and the court committed error in sustaining them and dismissing the petition.

*Judgment reversed. All the Justices concur.*