## ROBY *et al. v.* NEWTON.

1. Under the Civil Code, § 3090, a remainderman is not entitled to claim immediate possession as a result of a forfeiture of the interest of the tenant for life, unless it appears that there has been both permissive and voluntary waste by the tenant, or one for whose conduct he is responsible; and it must also appear that the voluntary waste was committed wantonly and in a manner evidencing an utter disregard of the rights of the next taker. (FISH, P. J., and LAMAR, J., dissent.)
2. A petition by heirs at law against a dowress alleged acts of waste, and prayed for a forfeiture of the estate of the tenant in dower, and in the alternative for damages in the event the evidence did not establish a forfeiture. There was no special demurrer to the petition. *Held*, that at the trial the judge should have submitted both issues to the jury, without any written request asking the submission of the question of damages.
3. There was no evidence to authorize a forfeiture; but there was evidence which would have authorized a finding in favor of the plaintiff on the question of damages, and it was error not to submit this issue to the jury.

Argued November 26, 1904.—Decided January 27, 1905.

Equitable petition.　　Before Judge Lewis.　　Jasper superior court.　　January 11, 1904.

This was an action by the heirs at law of a decedent against his widow, who was in possession of a tract of land which had been set apart as her dower, upon which land were situated the mansion house and other improvements. It is alleged that the widow has committed waste, in that she has allowed the improvements to become out of repair, and has also actually destroyed other improvements, having also cut timber growing upon the land. It is also alleged that the acts complained of were done wantonly, with a deliberate intention to injure the plaintiffs; that the defendant is insolvent and has no property except her dower, unless it be some small personal property of trifling value, which is incumbered by liens exceeding in amount the value of the property; and that the defendant has cleared up lands and threatens to clear up other lands and destroy the timber thereon, while the cleared land and uncleared land are now in the proportions that a prudent person would desire. The prayers were, that the plaintiffs recover the land as forfeited to them by the acts of waste complained of; that, in the event this prayer is denied, they recover damages; and that the defendant be restrained from further acts of waste tending to the permanent

injury of the freehold. The answer of the defendant was in effect a general denial of all the material allegations of the petition. The trial resulted in a verdict for the defendant, and the case is here upon an assignment of error by the plaintiffs complaining of the overruling of their motion for a new trial.

*J. D. Kilpatrick,* for plaintiffs.

*Greene F. Johnson,* for defendant.

COBB, J. 1. By the ancient common law, the only persons punishable for waste were guardians in chivalry, tenants in dower and by the curtesy. Lessees for life and for years were not liable. This distinction was made for the reason that tenancies of the character first named were created by law, and the law must therefore furnish a remedy for a violation of the rights of the owner of the inheritance; and lessees for life or for years acquired their interest by contract with the owner of the fee, who could have protected himself against loss in this respect. The punishment for waste by the common law was single damages. 2 Scribner on Dower (2d ed.), 795. This was also the punishment under the statute of Marlbridge. 3 Wash. Real Prop. (6th ed.) 534. By the statute of Gloucester all tenants for life or years were made liable for waste, and it was provided that the tenant should forfeit "the thing that he hath wasted," and also pay treble damages. Ibid. It was determined, that, under the words above quoted, the place was also forfeited; and that if the waste be here and there over a wood, the whole wood should be forfeited; or if in several rooms of a house, the whole house; but if it should be done in only one end of the wood or in one room of the house, if these places could be conveniently separated from the rest, the thing wasted and subject to forfeiture would be such places only, and not the whole estate. 2 Bl. Com. 283. There are statements that at common law a dowress was liable for permissive as well as voluntary waste; but Mr. Park, in his work on Dower, says that the researches of Mr. Hargrave as well as his own failed to find any authority to that effect. See Park on Dower, 357. In the 28 Am. & Eng. Enc. Law (1st ed.), 894, we find the statement that the better opinion seems to be that the tenant in dower is not liable for mere permissive waste, and that this is especially true if she deals with the estate as a prudent per-

son would deal with it if he owned it absolutely. See, in this connection, 14 Cyc. 1014 et seq. In *Parker* v. *Chambliss*, 12 *Ga.* 235, it was held that the dowress was liable for waste *committed* on the estate, but that she did not thereby forfeit her estate and treble damages, as provided by the statute of Gloucester, the remedy against her being an action on the case in the nature of waste to recover the actual damage done to the estate, or injunction to restrain her from *committing* waste. It appears from the original record that that case was tried upon an agreed statement of facts, which set forth merely that the dowress had "committed" waste. It does not appear whether the waste was permissive or voluntary, but the use of the word *committed* would lead to the inference that the waste was of the latter character. The ruling in that case was to the effect that the statute of Gloucester was of force, so far as it made a tenant in dower liable in damages for waste; but that the harsh and stringent remedy of forfeiture and treble damages, which was doubtless intended for the benefit of the feudal heir, was not adapted to our conditions, and therefore never became a part of our law. The question as to what would be waste by a dowress was distinctly left open. The code, which went into effect in 1863, embraced within it the provisions now contained in the Civil Code, § 3090, which is as follows: " The tenant for life is entitled to the full use and enjoyment of the property, so that in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion. For the want of such care, and the wilful commission of such acts, he forfeits his interest to the remainderman, if he elects to claim immediate possession." The dowress being a tenant for life, she holds her estate with all the privileges of such a tenant, and, unless otherwise provided, subject to all the liabilities of tenants of that character. See, in this connection, *Rusk* v. *Hill*, 121 *Ga.* 379. This section does not distinctly declare that a tenant for life is liable for actual waste, or will be enjoined from committing threatened waste, but it has been held since the code that such is the law. *Dickinson* v. *Jones*, 36 *Ga.* 97; *Smith* v. *Smith*, 105 *Ga.* 106 (2); *Kollock* v. *Webb*, 113 *Ga.* 762. In *Woodward* v. *Gates*, 38 *Ga.* 213, it was said that the effect of the code was to restore that part of the statute of Gloucester

in reference to forfeiture for waste, but that the rule as to treble damages was not re-enacted.    While the section of the code does not use the terms "permissive waste" or "voluntary waste," or the term "waste" at all, still an analysis of that section will indicate that its author had in mind the distinction between the two classes of waste.    It imposes upon the life-tenant the duty of exercising the ordinary care of a prudent man for the preservation and protection of the estate, and the failure to do this is permissive waste; and it also prohibits the commission of any act tending to the permanent injury of the person entitled in remainder or reversion, and the commission of such acts is voluntary waste. A liability both for permissive and voluntary waste is therefore imposed upon the tenant for life; and all such tenants are liable to the reversioner or remainderman for actual damages resulting from waste of either character.

It is now to be determined when waste will work a forfeiture The code does not use the language of the statute of Gloucester, and limit the forfeiture to the thing wasted, but when a forfeiture results it is the "interest" of the tenant, which would seem to be his entire interest in the premises, without reference to what portion of the estate was the particular subject of the waste. After declaring the degree of care that the tenant shall exercise, and the acts which he is prohibited from doing, the code provides that a forfeiture results "for the want of such care and the wilful commission of such acts," if the remainderman elects to claim immediate possession.    It is said that "and" should be here construed "or," and that the section should read that a forfeiture results from the want of such care *or* the wilful commission of such acts, or should read, for the want of such care, as well as for the commission of such acts; thus making a forfeiture result either from permissive or from voluntary waste.    It is also contended that the word "wilful" should be construed to mean simply intentional, and not to convey the idea of malice, evil intent, or wantonness.    Forfeitures are not favored by the law. Statutes providing forfeitures, and thereby imposing upon individuals penalties greater than the payment of the actual damages which their wrongful acts have caused others to suffer, are penal in their nature, and must be construed strictly against the persons claiming the forfeitures; practically the same rule of construc-

tion being adopted as is usually followed in the interpretation of criminal law. See 22 Am. & Eng. Enc. Law (2d ed.), 654. In a penal statute the word "wilful" generally means, with a bad purpose; an evil purpose; without ground for believing the act to be lawful. *Hateley* v. *State*, 118 *Ga.* 81, and cit. While in interpreting statutes it is sometimes permissible to read "and" "or," we do not think that in a statute which imposes a forfeiture or a penalty this change in wording should be made by construction, when by the terms of the statute as framed it requires the concurrence of two things to work a forfeiture or impose the penalty, and the result of a change in the verbiage would have the effect to bring about a forfeiture or penalty by an existence of only one of the two things. The statute in effect says that a forfeiture shall result whenever the tenant is guilty of both permissive and voluntary waste, and voluntary waste of that character which is committed wantonly and in such a way as to evidence an utter disregard of the rights of those who are thereafter to take. There was nothing in either the statute of Marlbridge or of Gloucester which required that acts of waste should be wilful in the sense just referred to, and it may be that neither of these statutes was intended to apply to permissive waste, there being some language in each, and especially in the former, from which it might be inferred that the remedies provided in those acts were to be resorted to in case of voluntary waste only. But whether this be so or not it is unnecessary for us to determine, as we feel satisfied that our code makes the forfeiture dependent not only on the concurrence of permissive and voluntary waste, but voluntary waste of that character which is above indicated. See, in this connection, *Austell* v. *Swann*, 74 *Ga.* 281. The tenant is liable in damages for waste of any character, but he is not liable to forfeiture unless he commits that character of waste which a court of equity would enjoin as equitable waste in a case where the tenant holds without impeachment of waste; and the rule is clear in such cases that the waste must be wanton, and committed in such a manner as to indicate an utter disregard of the rights of those who are thereafter to take. See *Belt* v. *Simpkins*, 113 *Ga.* 894.

2. While a forfeiture of an estate for life will not result from waste, unless there is both permissive and voluntary waste, and

the latter is of the character above indicated, still the one who is to take after. the termination of the life-estate is entitled to damages for waste which is either permissive or voluntary. The permissive waste which, according to our code, would authorize a recovery of damages is that resulting from a failure to use the ordinary care of a prudent man for the preservation and protection of the property; and the voluntary waste is the commission of acts which tend to the permanent injury of him who is to take in the future. The tenant for life is entitled to the full use and enjoyment of the property; the only restriction upon this use being that the estate of those who are to follow him in possession shall not be permanently diminished in value by neglecting to do that which an ordinarily prudent person would do in the preservation of his own property, or by doing those things which are not necessary to the full enjoyment of the particular estate, and which have the effect to permanently diminish the value of the future estate. Many things were held to be acts of waste at common law which would not be such in this State. The clearing of land was waste in England, but such is not waste in Georgia, provided the land cleared still leaves the proportion of cleared land to uncleared land such as an ordinarily prudent person would maintain upon his own property. *Chapman* v. *Schroeder,* 10 *Ga.* 325; *Woodward* v. *Gates,* 38 *Ga.* 205 (5); *Small* v. *Slocumb,* 112 *Ga.* 281. The feudal system, which furnished the reasons for the common-law rule that a dowress was liable in damages for waste, and which brought about the statutes above referred to applying the same rule to other tenants for life and imposing harsh penalties not known to the common law, never having been of force in this State, the harsh and stringent rules applied in some English cases in determining what was waste are not and never were suited to the conditions of our people, and therefore never became a part of our law. Therefore our law determines the question as to what is waste by looking alone at the rights of two individuals, one in possession of the estate for a limited time, and the other who is to take after the lapse of that time, without regard to any system of tenures of which the estates in question formed a component part. In England the courts were bound to look, not only to the rights of the individuals who were owners of the estate, but also to the rights of the lord paramount under the system which

public policy demanded should be maintained.   Therefore under our law the tenant for life must not be harassed and disturbed by the interference of the reversioner or remainderman, unless it be clearly shown that the rights of the latter as the ultimate owner of the property are imperiled by the conduct of the tenant. Dower is favored by the law, and a tenant in dower, of all other tenants, is entitled to the enjoyment of her estate free from the undue espionage and intermeddling of the heirs of her husband or those who claim under them.

When waste of a character which will work a forfeiture has been committed, the reversioner may elect either to claim damages or to claim immediate possession.   Can he claim immediate possession and also pray that, in the event his evidence does not authorize such claim, damages to the estate in reversion may be assessed ?   That is, can a suit be brought in which the petition contains two counts, one alleging facts upon which a forfeiture is claimed and immediate possession prayed for, and another allege facts upon which damages are claimed ?   It may be that under our liberal system this would be allowed ; but certainly a petition which, although not separated into two counts in accordance with the rules of good pleading, has prayers in the alternative praying for a forfeiture if forfeiture is established, and, if not, for damages, would be maintainable unless there is a special demurrer filed at the first term, complaining of the misjoinder and of the informal way in which the two claims are pleaded together.   The petition in the present case being of the character just referred to, and there being no special demurrer to the same, the plaintiffs were entitled to have both issues submitted to the jury, and it was the duty of the judge to submit the same even though no written request was made to that effect.

3. The evidence did not authorize a finding that the estate had been forfeited.   But there was some evidence from which a jury might find that there was permissive waste proved in some instances, as well as acts of voluntary waste which would result in a depreciation of the value of the inheritance, and thereby entitle the plaintiffs to damages.   As the judge failed to submit the question of damages to the jury, a new trial should have been granted on this ground.

There was no error in allowing the dowress to testify as to the

motive with which she committed the alleged acts of waste.   See
*Acme Brewing Co.* v. *Railroad Co.*, 115 *Ga.* 495 (9); *Baxley* v.
*Baxley*, 117 *Ga.* 62 (4).   There was no error in failing to charge
on the subject of a permanent injunction against waste, as the
evidence did not show any threatened waste which rendered an
injunction necessary.   While the judge, in an equity case, may
in his discretion submit the issues of fact to the jury by appropr-
riate questions, the statute declares that he shall do this when
either party makes a request to that effect after the case is called
for trial and before the beginning of the introduction of evidence.
Civil Code, § 4849.   The record does not show that the request
that the case be submitted to the jury in the form of questions
was made before the introduction of evidence, and this may have
been the reason why the judge refused to submit the issues in
this manner.     *Judgment reversed.   All the Justices concur.*

LAMAR, J., concurring specially.   As clearly shown in the fore-
going opinion by Judge Cobb, the law applicable to the forfeiture
of estates as contained in the Civil Code, § 3090, is peculiar to
this State.   It differs from that at common law, and from the
ancient English statutes.   On this branch of the case, therefore,
the decision can not be controlled by a consideration of general
authorities.   The principle announced is far-reaching.   It covers
any life-estate created by deed or will, and is not limited in its
application to dower, the favorite of the law.   While I concur
in the judgment and in the ruling as to the effect of the evidence,
I am unable to agree to the proposition announced in the first
headnote that there must be a concurrence of permissive and vol-
untary waste before a forfeiture can result.   The practical effect
of that construction will be that in hardly any instance could
a forfeiture result, no matter how great the waste or how serious
the consequences to the remainderman.   For rare indeed will
be the case where the damage results from the operation both
of action and inaction at the same time.   Taking, for example,
the case of a city lot with a house thereon, I understand the rul-
ing to involve the proposition that if the life-tenant should permit
the building to rot to the ground, no forfeiture could be declared,
because while the waste was permissive it was not at the same
time voluntary.   On the other hand, if the life-tenant should will-
fully tear down the house, a forfeiture could not result, because,

though the waste was voluntary, it was not also permissive. But the result to the remainderman is the same, and the purpose of the statute is to protect him against both classes of misconduct. This is sought to be accomplished in each case in the same way, and by imposing a forfeiture as a penalty whether the waste be by acts of omission or commission.

This view is sustained by the recognition, in the Civil Code, § 3090, of the existence of the two classes of waste; by the separation of the two classes in the first sentence although they are united by the word "and." The word "and" there is clearly separative and operates as a disjunctive. It has the same effect in the last sentence, which deals with the two classes of acts out of which the forfeiture may grow. This is made specially apparent by an examination of the punctuation. "For the want of such care, and the willful commission of such acts, he forfeits his interest to the remainderman." The use of the comma before the word "and" makes the last clause parenthetical, and fully justifies a reading that "for the want of such care he forfeits his interest, and likewise for the willful commission of acts tending to the permanent injury of the person entitled in remainder he forfeits his interest to the remainder. The first sentence prohibits waste by permissive acts, and also by voluntary acts. The penalty is adjusted to this double prohibition. It makes a forfeiture result from the want of such care, and also result from the willful commission of voluntary acts amounting to waste. Of course, forfeiture will never result from slight acts of waste. This is clearly involved in the language of the section. The penalty is imposed for such serious acts as tend to the permanent injury of the person in remainder, or to that class of negligence which fails to preserve and protect the corpus. But when by action or inaction the character, quality, or value of the property is being destroyed, the wrong-doer must suffer the penalty of a forfeiture. Nor can he complain, for it is brought about by his own disregard of the rights of the one who is to come after. Nor will it do to say that the remainderman has a remedy by injunction to stay waste, or for damages for waste already committed. The remainderman is frequently so far removed as not to know what is being done with the property. Injunction could not restore what had been destroyed. Damages might not be recoverable out of an

insolvent life-tenant. The adequate means by which the law secures the rights of the one and the performance of duty by the other is the declaration in advance that a forfeiture shall result from these serious transgressions. And while forfeitures are not favored, they are not so far disfavored as to be unenforceable in a case expressly provided for by law. In these views I am authorized to state that Justice Fish concurs.