## 4206. PARRISH v. TAGGART-DELPH LUMBER CO.

A written agreement to accept a bill of exchange to be drawn in the future is valid and binding, if the bill is drawn in strict accordance with the provisions of the agreement and within a reasonable time, in favor of any person who on the faith thereof receives the bill for a valuable consideration.

DECIDED NOVEMBER 12, 1912.

Appeal; from Chatham superior court—Judge Charlton. April 11, 1912.

*D. S. Atkinson,* for plaintiffs. *W. L. Clay,* for defendant.

POTTLE, J. The petition contained two counts. In the first count it was alleged, that the defendant authorized the firm of Brown & Roberson, by telephone and by writing, to draw on the defendants for the sum of $100, and defendant would pay the draft so drawn; that they drew the draft, and that the plaintiff, relying on the telephone conversation and the written authority from the defendant,· bought the draft from Brown & Roberson,, paying value therefor, and without knowledge of any equities existing between the parties or of any reason why the defendant should not pay the draft. The written authority relied on was in the form of a letter addressed to Brown & Roberson, and was as follows: "We also confirm the writer's conversation regarding the car-load of 330 7x8 and 7x9-8'6" heart pine. We will pay your draft for $100 against bill of lading for this car-load." Authority to draw the draft was given on January 5, and the draft was drawn and discounted by the plaintiff on January 7. In the second count it was alleged, that Brown & Roberson shipped to the defendant a car-load of cross-ties of the net value of $100, which ties were received and accepted by the defendant on January 18, 1911; that on that day Brown & Roberson sold to the plaintiff the written order on the defendant for the proceeds of the car of ties, the plaintiff paying value for said order; that defendant had failed and refused to pay plaintiff the value of the ties or any part thereof. The evidence relied on was in the form of a letter addressed by Brown & Roberson to the defendant, requesting it to pay the plaintiff the proceeds of the car of ties sent to the defendant on January 11, 1911. The trial judge struck the first count of the petition, on demurrer, and, after hearing the evidence upon the second count, directed a verdict in favor of the defendant. In the bill of excep-

tions error is assigned upon the verdict and judgment in favor of the defendant, upon the ground that the ruling sustaining the demurrer and dismissing the first count in the petition was controlling in effect, and that, that judgment being erroneous, the verdict and judgment in favor of the defendant is not a legal termination of the case. Upon this assignment of error it is necessary only to consider the ruling sustaining the demurrer to the first count of the petition.

The question thus presented is whether or not written authority to draw a draft amounts in law either to an acceptance of the draft when drawn, or to such a promise that an action for the breach of it can be maintained by one who suffered loss on account of having acted upon the faith of the promise. The statute of frauds requires the acceptance of a bill of exchange to be in writing. Civil Code (1910), § 3222 (2). By virtue of our adopting act the common and statute law of England, as it prevailed on the 10th of May, 1776, became a part of the law of this State, except in so far as it was unsuited to our conditions. The decisions of the English courts construing the common and statute law of England, which were in existence upon the day last mentioned, are accepted in this State as conclusive evidence of what was the common and statute law of England at that time. The decisions of the English courts made subsequently to the date of the adopting statute and contravening decisions made prior to that date have no binding force in this State. The presumption is that the General Assembly, in passing the adopting act, intended to adopt the common and statute law of England as it was understood and construed at the date of the adopting act. *Thornton* v. *Lane,* 11 *Ga.* 459-500; *McMillan* v. *Harris,* 110 *Ga.* 72-75 (35 S. E. 334, 48 L. R. A. 345, 78 Am. St. R. 93), *Moss* v. *Wood, R. M Charlton's Reports,* 42. There being no decision of the Supreme Court of this State authoritatively adjudicating the question presented for decision, it becomes necessary to ascertain what was the law of England upon the subject at the time of the passage of our adopting statute.

After a careful examination of the English decisions, the question seems to be settled by the decision in Pillans *v.* Van Mierop, 3 Burr. 1663. In that case suit was brought to enforce a written agreement to honor a bill to be drawn in future. The judges presiding were Lord Mansfield and Justices Wilmot, Yates, and Aston.

Lord Mansfield expressed the following opinion: "This is just the same thing as if White had drawn on Van Mierop and Hopkins, payable to the plaintiffs: it had been nothing to the plaintiffs, whether Van Mierop and Co. had effects of White's in their hands, or not; if they had accepted his bill. And this amounts to the same thing:—'I will give the bill due honour,' is, in effect, accepting it. If a man agrees 'that he will do the formal part,' the law looks upon it (in the case of an acceptance of a bill) as if actually done. This is an engagement 'to accept the bill,' if there was a necessity to accept it; and to pay it, when 'due;' and they could not afterwards retract. It would be very destructive to trade, and to trust in commercial dealing, if they could." Mr Justice Wilmot said: "The true reason why the acceptance of a bill of exchange shall bind, is not on account of the acceptor's having or being supposed to have effects in hand; but for the convenience of trade and commerce. Fides est servanda. An acceptance for the honour of the drawer, shall bind the acceptor; so shall a verbal acceptance. And whether this be an actual acceptance, or an agreement to accept, it ought equally to bind. An agreement 'to accept a bill to be drawn in future' would (as it seems to me), by connection and relation, bind, on account of the antecedent relation. And I see no difference between its being before or after the bill was drawn. Here was an agreement sufficient to bind the defendants to pay the bill: agreeing 'to honour it,' is agreeing to pay it." Mr. Justice Yates announced the following view: "A promise 'to accept' is the same as an actual acceptance. And a small matter amounts to an acceptance:'and so says Molloy, lib. 2. c. 10. § 20. And an acceptance will bind, though the acceptor has no effects of the drawer in his hands; and without any consideration. Symons *v.* Parminter, Hil. 1747. 21 G. 2. B. R. And a bill accepted for the honour of the drawer, will also bind. . . But even if it did not amount to an actual acceptance, yet it would equally bind the defendants: they would be equally obliged to perform the effect of their undertaking." Mr. Justice Aston thus tersely announced his opinion: "This must be considered as a commercial transaction; and is a plain case The defendants ·have undertaken to honour the 'plaintiff's draught.' Therefore they are bound to pay it." It will thus be seen that the Justices who presided at the argument of the case just cited were unanimously of the opinion

that a written agreement to accept a bill to be drawn in future was tantamount to an acceptance of the bill, and was enforceable in the same manner and to the same extent that an actual acceptance would have been enforced. There was no question in that case with reference to whether the bills were seasonably drawn after the agreement to accept. The bills were drawn by persons who had previously honored drafts of another person, drawn upon the defendant. The plaintiffs thus stood in substantially the same position as stands the plaintiff in the present case; that is to say, the bills were drawn upon the faith of the agreement of the defendants to pay, and the plaintiffs parted with money amounting to the face of the draft upon the faith of this agreement. This decision is as binding upon the courts of Georgia as would be a decision of our own court.

It is true that the rule announced in Pillans v. Van Mierop, supra, was modified to some extent by later English decisions. For instance, in Johnson v. Collings, 1 East, 63, it was held, that a mere promise of a debtor to his creditor that if he would draw a bill · upon him for the amount of his demand he should then have the money and would pay it does not in law amount to an acceptance of the bill when drawn; and an indorsee for a valuable consideration, between whom and the drawee no communication passed at the time of his taking the bill, can neither recover upon the count as for an acceptance, nor on the general counts as for money had and received. Serjt. Williams, representing the plaintiff, relied upon the decision in Pillans v. Van Mierop, supra. Lord Kenyon, in his opinion, did not refer to this decision, but stated that he was not disposed to say that "a promise to accept a bill before it is drawn is equally binding as if made afterwards." Grose, J., said: "No authority has been cited to show that by the law merchant a mere promise to accept a bill to be drawn in future amounts to an actual acceptance of the bill when drawn." Le Blanc, J., seemed to recognize that the question was adjudicated in the case of Pillans v. Van Mierop, but stated that Lord Mansfield had, in the case of Pierson v. Dunlop, Cowp. 573, modified the doctrine announced in that decision, and announced the true rule to be: "It has been truly said as a general rule, that the mere answer of a merchant to the drawer of a bill, saying, he will duly honour it, is no acceptance; unless accompanied with circumstances

which may induce a third person to take the bill by indorsement: but if there are any such circumstances, it may amount to an acceptance, though the answer be contained in a letter to the drawer." Lord Kenyon added that in his opinion the rule thus announced by Lord Mansfield was carrying the doctrine of implied acceptance "to the utmost verge of the law." In Bank of Ireland v. Archer, decided by the Court of Exchequer in 1843, it was definitely ruled that a parol promise to accept a foreign bill of exchange before it was drawn would not amount to an acceptance, even though such promise had been communicated to the indorsees (the plaintiffs) and the bill had been taken by them on the faith of it.

The only decision of the Supreme Court of Georgia bearing upon this question that has been brought to our attention is in *Atlanta National Bank* v. *Northwestern Fertilizing Co.*, 83 *Ga.* 356 (9 S. E. 671). The question was not directly involved, but in the opinion Mr. Chief Justice Bleckley remarked that "the rule touching agreements for acceptance upon which an action will lie seems to be that an authority to draw is equivalent to an acceptance, but should be express and special in its character, and describe with sufficient certainty the bill to be drawn." In America there is great contrariety of opinion. Some courts hold that a promise in writing to accept an existing bill amounts to an acceptance, whereas a promise to accept a non-existing bill does not. Some hold that a verbal promise to pay a bill to be drawn in the future, which has been acted on by the promisee, would be binding; but the great weight of authority seems to be that a verbal promise to pay either an existing bill or one to be drawn in the future would not be binding. It is doubtless true that under exception 3 of the statute of frauds,—that is, where there has been such part performance of the contract as would render it a fraud on the part of the promisor to fail to comply,—a case might arise where even a verbal promise to accept a bill would be enforced. Civil Code (1910), § 3223. But even if such a promise will ever be enforced, it would seem to be clear that it must have been made directly to the party who parted with the money or other valuable property upon the faith of the promise.

Of course, there are certain essentials which must be present before even a written promise to accept a non-existing bill will amount in law to a promise capable of enforcement. In the first

place, the bill must be drawn within a reasonable time after the promise to accept is made. In the second place, the promise should describe the bill to be drawn in terms sufficiently definite, and the bill must be drawn in strict compliance with the promise; and in the third place, the bill must have been taken upon a sufficient consideration and upon the faith of the promise. The rule is thus stated in 7 Cyc. 767: "An agreement to accept a bill to be drawn is in effect the acceptance of such bill, if the bill is drawn in strict accordance with the provisions of the agreement and within a reasonable time, in favor of any person who on faith thereof received the bill for a valuable consideration. Reliance on the agreement is a sufficient consideration for it. The agreement may be conditional on some act on the part of the drawer. The bill must be clearly and particularly described in the agreement and should be payable at a time certain. It has been held that there was no acceptance where it was payable after sight. Authority to draw a bill is an implied agreement for acceptance on the part of the drawee who gives authority and may cover one or more future acceptances." See, also, Daniel on Negotiable Instruments (5th ed.), §§ 550 et seq.; 2 Randolph on Commercial Paper (2d ed.), §§ 614 et seq.

The allegations of the first count of the petition bring the case within the rule where a written agreement to accept a bill to be drawn in the future is binding on the promisor. The agreement to accept definitely described the bill to be drawn; the bill was apparently drawn in strict accordance with the agreement; it was drawn within a reasonable time after the promise was made, and it was taken by the plaintiff upon the faith of the promise. If any of these conditions were not in point of fact complied with, this can be shown by way of defense. The first count of the petition stated a cause of action, and consequently we are of the opinion that the court erred in dismissing it upon general demurrer. In so far, however, as the plaintiff sought to recover upon the promise based upon the telephone conversation, we do not think he stated a case. The promise was not made to the plaintiff, and was not within any of the exceptions to the statute of frauds. Our conclusion is that the direction of the verdict in favor of the defendant upon the second count in the petition should be reversed, because of the antecedent error committed by the court in dismissing the first

count of the petition upon general demurrer, and that the whole case should be sent back for trial.

After the foregoing opinion had been filed and a judgment of reversal entered, the opinion was withdrawn and the judgment vacated, on motion for rehearing, and a reargument was ordered, that counsel for the defendant in error might have an opportunity to present more fully his views upon the contention that, the agreement to accept having been conditional, no cause of action was set forth in the first count, because the plaintiff did not allege a compliance with the conditions. In the original opinion the court did not question the correctness of counsel's contention that where a written promise to accept a bill to be drawn in the future is made upon specified conditions, the bill must be drawn in strict accordance with the promise, and compliance with the conditions must be shown before a recovery can be had upon the promise as an acceptance. *Marshall* v. *Clary,* 44 *Ga.* 510; Guaranty Trust Co. *v.* Gratian, 114 *Fed.* 433, s. c. 186 U. S. 486; Hannay *v.* Guaranty Trust Co., 187 Fed. 686. Nor do we question the general proposition contended for, that the plaintiff should allege the performance of the conditions upon which the promise to accept was made. In the present case, however, the suit was brought in a justice's court, where niceties of pleading are not required, and such particularity of averment is not demanded as is necessary in a superior or city court. This court has gone quite far in upholding statements of causes of action in justices' courts. One of the more recent precedents is found in *Atlantic Coast Line R. Co.* v. *Lane, 9 Ga. App.* 524 (71 S. E. 918), where it was held that an action for damages to personal property would not be dismissed even though there was no express allegation of negligence, it being implied, from the general averment of damage, that the plaintiff intended to charge the defendant with negligence. In the present case the plaintiff alleges that the defendant authorized the draft to be drawn by a writing, a copy of which was exhibited, and that the plaintiff, "relying on . . said written authority, bought said draft." The demurrer was general, and as against such a demurrer it will be held that the plaintiff sufficiently alleged that the draft was drawn in strict accordance with the order. If in fact it was not, the defendant can show it and defeat the action. We, therefore, adhere to the opinion 'that the judgment of the court below should be reversed.                    *Judgment reversed.*