538

## WARLICK v. GREAT ATLANTIC & PACIFIC TEA CO.

No. 7463. MAY 16, 1930.

*Wright, Wright & Covington,* for plaintiff.
*Maddox, Matthews & Owens,* for defendant.

GILBERT, J. Susie Warlick brought an action against Great Atlantic and Pacific Tea Company, alleging that the parties executed a lease contract for a storehouse for a term of one year, and providing options for four renewals of the lease for periods of one year each; that the defendant has forfeited the lease by reason of a certain alleged act of waste, to wit, the said defendant has without the consent of petitioner "materially altered and changed the building located upon said premises, by tearing out the entire front of said building and moving the entrance of said building, replacing the front of the building with a solid front across the entire front of said building, with the entrance at the extreme side thereof;" that defendant had no right, under the law, without consent of petitioner, to so change said building, and the same constitutes a waste upon said premises, which renders the lease contract null and void and of no effect; that petitioner has demanded of defendant surrender of possession of the premises, which has been refused; that, "by reason of the facts as aforesaid and the waste committed upon said property by defendant, the defendant has forfeited any rights to said premises, and petitioner is entitled to a cancellation and surrender of said lease and to the recovery of the possesion of said property;" that "it will cost your petitioner the sum of $2000 to replace said building in the condition that the same was in prior to the change made therein by the said defendant," and "the . . replacing said building in its previous condition and in the same style of architecture that existed prior to said change by the said

defendant will cost your petitioner said sum of $2000, and by reason of said fact as aforesaid your petitioner has been injured and damaged by said defendant in the sum of $2000." The prayers are: (1) "that said lease contract . . be adjudged and decreed . . to be cancelled, null and void;" (2) that petitioner have and recover possession of the premises from defendant; (3) that petitioner recover of the defendant the sum of $2000 damages. The defendant demurred generally and specially to the petition. The general demurrer was sustained and the petition dismissed. The exception is to that judgment. The contract of lease provides for payments of monthly rentals. It also provides: "If any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained by the lessee, then it shall be lawful for the lessor to re-enter the said premises and to again have and enjoy the same," and the parties covenanted that the lessor would, at the expiration of the term, "quit and surrender the premises . . in as good state and condition as received, reasonable wear and tear and damage by fire or the elements, or from other cause beyond its control, excepted;" that the "lessee, on paying the said rent and performing the covenants herein agreed by it to be performed, shall and may peaceably and quietly have, hold, and enjoy the said demised premises for said term."

A judgment was heretofore rendered transferring this case to the Court of Appeals, on the ground that this court was without jurisdiction. It was said, in the decision as then rendered: "The action is based purely on the statute, and is in no sense an equitable action." A motion was filed, in which movant contended that "the sole *material* prayer of the petition in said case is for a judicial cancellation of said lease," and that, cancellation being essentially an equitable doctrine, this court, and not the Court of Appeals, had jurisdiction; and a rehearing was asked on the ground that this court had construed the action to have been brought under the provisions of Code § 3666 and § 3695, and that movant "is proceeding only on the equitable right of cancellation, and not under the statute." Movant contends that Code § 3666 is not applicable to the case, because that section "applies only to tenants for life." The motion was granted, and the former decision was withdrawn. The construction that the petition was based on Code § 3666 is an unaccountable error for which the writer is primarily

responsible. That section applies expressly to tenants for life, and is as follows: "The tenant for life is entitled to the full use and enjoyment of the property, so that in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion. For the want of such care, and the willful commission of such acts, he forfeits his interest to the remainderman, if he elects to claim immediate possession." The case has been reconsidered with more than ordinary care, because of the important principles of law involved.

■ The contract attached to the petition as an exhibit provides as follows: "The provisions of this indenture giving the lessee certain renewal privilege rights are not intended, by either the lessor or the lessee, to constitute a present demise of the leased premises for the term of any renewal period, nor are they intended to be a contract for the conveyance of any interest in said premises." Under a proper construction of this provision no estate was conveyed. The contract created merely the relation of landlord and tenant. Civil Code (1910), § 3691.

■ Is there authority in the common law for the forfeiture of a rental contract for waste such as shown in this case? Our investigation leads us to the conclusion that there is no such authority. "By the ancient common law, the only persons punishable for waste were guardians in chivalry, tenants in dower and by the curtesy. Lessees for life and for years were not liable. This distinction was made for the reason that tenancies of the character first named were created by law, and the law must therefore furnish a remedy for a violation of the rights of the owner of the inheritance; and lessees for life or for years acquired their interest by contract with the owner of the fee, who could have protected himself against loss in this respect. The punishment for waste by the common law was single damages. 2 Scribner on Dower (2d ed.), 795. This was also the punishment under the statute of Marlbridge. 3 Wash. Real Prop. (6th ed.) 534. By the statute of Gloucester all tenants for life or years were made liable for waste, and it was provided that the tenant should forfeit 'the thing that he hath wasted,' and also pay treble damages." *Roby* v. *Newton,* 121 *Ga.* 679 (49 S. E. 694, 68 L. R. A. 601). The contract of rental in this case provided: "This lease covers in full each

and every obligation of every kind or nature whatsoever from the lessee to the said lessor concerning the premises hereby demised, any statute, law, or custom of the State in which the said premises are situated to the contrary notwithstanding." In the *Roby* case at p. 685, the court said: "When waste of a character which will work a forfeiture has been committed, the reversioner may elect to claim damages or to claim immediate possession." Mr. Justice Lamar concurred specially, saying, in part: "As clearly shown in the foregoing opinion by Judge Cobb, the law applicable to the forfeiture of estates as contained in the Civil Code, § 3090, is peculiar to this State. It differs from that at common law, and from the ancient English statutes. On this branch of the case, therefore, the decision can not be controlled by a consideration of general authorities. The principle announced is far-reaching. It covers any life-estate created by deed or will, and is not limited in its application to dower, the favorite of the law. While I concur in the judgment and in the ruling as to the effect of the evidence, I am unable to agree to the proposition announced in the first headnote that there must be a concurrence of permissive and voluntary waste before a forfeiture can result." Mr. Justice Fish concurred in the views expressed by Mr. Justice Lamar. It will be seen that the court was unanimous except as to the necessity for both permissive and voluntary waste before a forfeiture can result. Counsel for the plaintiff, in their brief, say: "We believe the law of Georgia to really be stated by Judge Lamar in his dissent" in the *Roby* case. As shown, Mr. Justice Lamar concurred in all except one ruling, and that principle is not here involved in so far as we deal with the case.

In *Brown* v. *Martin,* 137 *Ga.* 338 (73 S. E. 495, 39 L. R. A. (N. S.) 16), this court, in a full-bench decision, again dealt with a case involving acts of waste. Again the court declared the same principles stated in the *Roby* case as to the holders of estates who could maintain actions for waste. It seems clear that under the original common law the holder of an estate for years could not bring such an action. It required the statute of Marlbridge (52 Henry III, c. 23) to extend the right to tenants of that class. As shown by the two last-mentioned cases, the rigors of the original common-law action for waste underwent modification and amelioration in England, and even more so in Georgia. See the following

English cases: Doherty *v.* Allman & Dowden (House of Lords), 3 Law Reports, 709, where an injunction was sought to prevent a tenant for 999 and 988 years from converting store buildings into residences. The injunction was denied, because under the facts of the case the change would increase the value of the property and "the waste alleged was meliorating waste." See Dalton *v.* Jones, 110 English Reports (King's Bench, Book 39), 403; Huntley *v.* Russell, 116 English Reports (King's Bench, Book 45), 1381.

In an act of the General Assembly approved February 25, 1784 (Prince's Digest, 507, Cobb's Digest, 721), the caption recites: "Whereas, during the late convulsions in this State, several salutary laws were lost and destroyed, that had from time to time been enacted by the General Assembly of the same; and among others an act reviving and putting in force such and so much of the laws of the province of Georgia as were adjudged necessary to be in force in this State; and whereas the said laws are for the most part suited to the circumstances of the people; and whereas it is absolutely necessary for the well governing every State, that laws properly adapted to the circumstances of the inhabitants be at all times in force: . . Be it enacted, &c. That all and singular the several acts, clauses, and parts of acts, that were in force and binding on the inhabitants of the said province, on the 14th day of May, A. D. 1776, so far as they are not contrary to the constitution, laws, and form of government now established in this State, shall be and are hereby declared to be in full force, virtue, and effect, and binding on the inhabitants of this State, immediately from and after the passing of this act, as fully and effectually, to all intents and purposes, as if the said acts, and each of them, had been made and enacted by this General Assembly, until the same shall be repealed, amended, or otherwise altered by the legislature: And also the common laws of England, and such of the statute laws as were usually in force in the said province, except as before excepted." It was enacted that all acts and parts of acts that were in force and binding on the inhabitants of said province on the 14th of May, A. D. 1776, so far as they were not contrary to the constitution, laws, and form of government then established in this State, were declared to be in full force and effect, until the same were repealed, amended, or otherwise altered by the legislature, "and also the common law of England and such of the statute laws

as were usually in force in said province, except as before excepted." This act has always been construed as adopting the common and statute law of England as it prevailed on the date named, "except in so far as it was unsuited to our conditions." *Parrish* v. *Taggart-Delph Lumber Co.,* 11 *Ga. App.* 773 (76 S. E. 153); *Harris* v. *Powers,* 129 *Ga.* 74 (2) (58 S. E. 1038, 12 Ann. Cas. 475).

As bearing upon the question of the suitability of the English action of waste in the State of Georgia, or to what extent such action was suited to the conditions of this State, much light is thrown by reference to Code (1910) § 3666, which has reference to life-estates, and § 3687, which has reference to estates for years. No statute has been enacted with reference to waste, extending its provisions where the relationship is simply that of landlord and tenant. Even, therefore, if we are wrong in the conclusion that the action of waste applied to landlords and tenants in England, it would appear that the State of Georgia deliberately rejected the applicability of that principle to landlord and tenants. The doctrine expressio unius est exclusio alterius is considerably emphasized when we consider the vastly different conditions prevailing in this country as compared to the conditions in England, and especially in view of the fact that the harsh remedy was continuously being ameliorated in England, as shown by the English cases cited above. The universally accepted maxim that forfeitures are not favored also furnishes a reason for the trend towards such amelioration of the old rigidity. The petition in the present case does not allege that the value of the property has been lessened by the acts of the defendant. It does not allege actual monetary injury. It merely alleges that it will cost the petitioner $2000 to change the doorway back to its original place. It would seem, therefore, contrary to both English law and the law of Georgia to· hold that the common law of England as enforced in this State furnishes any authority for the forfeiture of a rental contract such as involved in this case, for waste, and more especially for what is here alleged to be waste.

It necessarily follows that a recovery by a landlord against a tenant for damages based purely upon the common law can not be had. Such an action was unknown under the common law in England, and it is unknown under the common law as adopted and enforced in this State. If the petitioner can legally recover

damages against the tenant, such recovery must rest upon the contract and the statute law of Georgia. Here a barrier is encountered. The petitioner expressly denies the applicability of any State statute, and obtained a reconsideration of the case purely upon the contention that the case did not come within our statutes but was brought under the common law. Moreover, as stated above, no actual damage is alleged. The only damage claimed is upon waste, as known to the common law. Moreover, the present contract makes provision for just such acts. The contract provides that at the expiration of the term, the tenant shall "quit and surrender the premises . . in as good state and condition as received." The term had not expired when suit was filed. It is not alleged that the defendant is insolvent, or that for any cause the landlord would be likely to suffer injury by delaying his suit until the expiration of the term of rental. Only at that time can it be determined whether the premises have been surrendered "in as good state and condition as received, reasonable wear and tear . . excepted."

■ We need not cite authorities for the statement that a landlord, in a proper case, may invoke the aid of equity to enjoin a tenant or any other person from damaging his property where he has no adequate remedy at law, as, for instance, where the defendant is insolvent, or for any other reason known and recognized in a court of equity. That remedy is available where the injury has not been consummated and completed. Where the injury has been consummated and the facts make a case, he may sue for damages, or he may sue for possession of the premises. Whether the one or the other of these remedies is applicable and a cause of action has accrued may depend upon the contract of rent, or other facts which may enter into the question. As to the remedy for forfeiture of the rental contract and to recover possession of the property, that right of action is purely an action at law. *Brown* v. *Martin,* 137 *Ga.* at p. 342 (supra). In that case, with reference to a suit based on Code § 3666, it was said that the right of action thereunder "is purely an action at law." Blackstone was quoted as stating "This action of waste is a mixed action, partly real so far as it recovers land, and partly personal, so far as it recovers damages." 2 Bl. Com. 228, 3 Id. 118. In *Bell* v. *Simkins,* 113 *Ga.* 894 (39 S. E. 430), Mr. Justice Cobb quotes from Bispham's

Principles of Equity the following: "The common-law remedy for waste, as extended by the statutes of Marlbridge and Gloucester, was a writ of waste, in which the thing wasted was forfeited, and damages were recovered. The writ of waste has been abolished in England, and the only common-law remedy which the remainderman now has is a special action on the case for damages. In many of the United States remedies for waste are given by statute; in some of them the place wasted being forfeited, and damages recovered; in others the remedy being simply an action for damages." Reference to the English cases will disclose that the same remedies were applied there. The complaining parties resorted to a court of equity when an injunction was sought to prevent waste, and to a court of law for a forfeiture of the estate or for damages when waste had been consummated. No injunction is sought in this case. The time for that remedy had passed, and petitioner seeks (1) damages; (2) cancellation of the contract; (3) recovery of possession of the premises. It follows from what we have said that the allegations of the petition are insufficient to authorize a court of equity to cancel the contract.

■ The court did not err in sustaining the general demurrer to the petition. *Judgment affirmed.* *All the Justices concur.*